**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ***In re* Challenge Mfg. Company Data Breach Litigation** | Lead Case No. 1:26-cv-01951-HYJ-SJB<br><br>Hon. Hala Y. Jarbou<br><br>**BRIEF IN SUPPORT OF DEFENDANT CHALLENGE MFG. COMPANY, LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. The Incident and the Notice Letter ........ 2

B. Plaintiffs' Allegations ........ 3

III. ARGUMENT ........ 5

A. Plaintiffs Lack Article III Standing ........ 5

1. Plaintiffs Do Not Allege a Concrete Injury. ........ 5

i. No Plaintiff Alleges an Unreimbursed Loss From the Fraudulent Charges. ........ 6

ii. The Alleged Risk of Future Harm Does Not Establish Standing in This Suit for Damages. ........ 6

iii. Plaintiffs Do Not Allege That Their Information Lost Value or That They Lost the Benefit of a Bargain. ........ 8

iv. Plaintiffs Cannot Establish Standing Through Time Spent Guarding Against a Speculative Risk. ........ 9

v. Allegations of Anxiety and Distress Do Not Establish Standing. ........ 10

vi. The Alleged Loss of Privacy Is Not a Concrete Injury. ........ 10

2. The Alleged Fraud and Spam Are Not Fairly Traceable to Challenge. ........ 14

3. Plaintiffs Lack Standing to Seek Injunctive or Declaratory Relief. ........ 16

4. At a Minimum, Oros Lacks Standing. ........ 18

B. The Complaint Fails to State a Claim. ........ 18

1. The Negligence Claim Fails Under Michigan Law. ........ 18

i. Plaintiffs Do Not Allege an Actual, Present Injury Caused by the Incident. ........ 19

ii. Plaintiffs' Negligence Per Se Theory Does Not Save the Claim. ........ 21

iii. Plaintiffs Allege No Injury From the Timing of the Notice. ........ 22

2. The Implied Contract Claim Fails Because Plaintiffs Do Not Allege Consideration or Mutual Assent. ........ 22

3. The Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege That Challenge Unjustly Retained a Benefit From Them. ........ 25

IV. CONCLUSION ........ 26

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re A-Line Staffing Sols. Data Sec. Incident Litig.*,
No. 24-cv-11917, 2026 WL 1480273 (E.D. Mich. May 27, 2026), *appeal docketed*, No. 26-1522 (6th Cir. 2026) ........ *passim*

*In re Arbor Assocs., Inc. Data Sec. Litig.*,
No. 1:25-cv-775, 2026 WL 2593049 (W.D. Mich. July 8, 2026) ........ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 18

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ........ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 18, 23

*Belle Isle Grill Corp. v. City of Detroit*,
256 Mich. App. 463, 666 N.W.2d 271 (2003) ........ 25

*Bohnak v. Marsh & McLennan Cos.*,
79 F.4th 276 (2d Cir. 2023) ........ 12

*Bowen v. Paxton Media Grp., LLC*,
No. 5:21-cv-00143-GNS, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) ........ 9

*Buchholz v. Meyer Njus Tanick, PA*,
946 F.3d 855 (6th Cir. 2020) ........ 10

*Candelaria v. B.C. Gen. Contractors, Inc.*,
236 Mich. App. 67, 600 N.W.2d 348 (1999) ........ 21, 22

*Cates v. Crystal Clear Techs., LLC*,
874 F.3d 530 (6th Cir. 2017) ........ 5, 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 6, 9, 16

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
756 F.3d 917 (6th Cir. 2014) ........ 8

*Dickson v. Direct Energy, LP*,
69 F.4th 338 (6th Cir. 2023) ........ 13

*Doe v. Henry Ford Health Sys.*,
308 Mich. App. 592, 865 N.W.2d 915 (2014) ........................................................19, 24, 25

*In re Flagstar Dec. 2021 Data Sec. Incident Litig.*,
No. 22-cv-11385, 2024 WL 5659583 (E.D. Mich. Sept. 30, 2024) .....................14, 19, 22, 25

*FTC v. Owens-Corning Fiberglas Corp.*,
853 F.2d 458 (6th Cir. 1988) ...............................................................................22

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) ........................................................................6, 7

*In re Grede Holdings LLC Data Breach Litig.*,
No. 25-cv-10831, 2026 WL 396292 (E.D. Mich. Feb. 12, 2026)................................... *passim*

*Hardrick v. Huss*,
155 F.4th 518 (6th Cir. 2025) ...............................................................................7

*Henry v. Dow Chem. Co.*,
473 Mich. 63, 701 N.W.2d 684 (2005)......................................................................19, 21

*Hill v. Sears, Roebuck & Co.*,
492 Mich. 651, 822 N.W.2d 190 (2012)....................................................................18

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025), *cert. dismissed*, No. 25-1085 (U.S. May 21, 2026) ....................................................................................................... *passim*

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ...............................................................................16

*Jenkins v. Associated Wholesale Grocers, Inc.*,
No. 24-4039-DDC-GEB, 2025 WL 708574 (D. Kan. Mar. 5, 2025) ...............................13, 15

*Kingen v. Warner Norcross + Judd LLP*,
No. 1:22-cv-01126, 2023 WL 11965363 (W.D. Mich. Oct. 5, 2023) ...............7, 21, 22, 24, 25

*Kolton v. Nassar*,
358 Mich. 154, 99 N.W.2d 362 (1959)......................................................................25

*Lochridge v. Quality Temp. Servs., Inc.*,
No. 22-cv-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023) ................................ *passim*

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................5, 16

*Mallory v. City of Detroit*,
449 N.W.2d 115 (Mich. Ct. App. 1989) ....................................................................22

*Malone v. Edw. C. Levy Co.*,
No. 25-cv-11107, 2026 WL 2444315 (E.D. Mich. Aug. 20, 2026)................................ *passim*

*In re Manpower of Lansing, MI, Inc., Data Breach Litig.*,
No. 1:25-cv-956, 2026 WL 1194822 (W.D. Mich. Mar. 19, 2026) ............................... *passim*

*Marlin v. Associated Materials, LLC*,
No. 5:23-cv-01621, 2024 WL 2319115 (N.D. Ohio May 22, 2024) ..........................11, 12, 15

*Merck v. Walmart, Inc.*,
114 F.4th 762 (6th Cir. 2024) ......................................................................11, 12, 13

*Munger v. Matco Tools Corp.*,
No. 5:23-cv-00337, 2026 WL 1223399 (N.D. Ohio May 5, 2026) ........................................12

*Muniz v. Bronson Health Care Grp., Inc.*,
No. 1:25-cv-693, 2026 WL 1649197 (W.D. Mich. Jan. 20, 2026)..........................................10

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
45 F.4th 816 (5th Cir. 2022) .....................................................................................7

*Polkowski v. Jack Doheny Cos.*,
No. 2:25-cv-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025), *appeal dismissed*, No. 25-2075, 2026 WL 1459816 (6th Cir. Mar. 9, 2026)............................. *passim*

*Pratt v. Ventas, Inc.*,
365 F.3d 514 (6th Cir. 2004) .....................................................................................18

*Raines v. Byrd*,
521 U.S. 811 (1997).....................................................................................................5

*Rodriguez v. CRG Lynwood LLC*,
No. 24-11576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025).................................... *passim*

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025), *cert. granted*, 146 S. Ct. 1591 (2026)....................................12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).....................................................................................................5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............................................................................................ *passim*

*Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*,
9 F.4th 357 (6th Cir. 2021) .........................................................................................7

*Whalen v. Michael Stores Inc.*,
153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017).........................6

*Yerkovich v. AAA*,
461 Mich. 732, 610 N.W.2d 542 (2000) ........ 24

*Zimmerman v. 3M Co.*,
542 F. Supp. 3d 673 (W.D. Mich. 2021) ........ 19

**Statutes**

U.S. Const. art. III ........ 1, 5, 6, 18

Federal Trade Commission Act ........ 22

FTC Act ........ 21, 22

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ........ 5, 27

Federal Rule of Civil Procedure 12(b)(6) ........ 18, 27

## I. INTRODUCTION

Plaintiffs Christy Oros, Amanda Thomsen, Wendy Parry, and Steven Dykman (collectively the "Plaintiffs") are current and former employees of Defendant Challenge Mfg. Company, LLC ("Challenge"), an automotive parts manufacturer. They sue on behalf of a putative class over a criminal cyberattack that Challenge discovered on May 8, 2026 (the "Incident"). Their Consolidated Class Action Complaint runs 90 pages and 309 paragraphs. It pleads three common-law claims: negligence, breach of implied contract, and unjust enrichment.

The Court should dismiss the Complaint. Plaintiffs lack Article III standing because the injuries they allege are either not concrete or not fairly traceable to Challenge. One Plaintiff alleges no misuse of her information at all. The other three allege fraudulent charges that, by their own account, were reversed or that they did not have to pay. Those charges involved a bank account and a cell phone account, and the Complaint pleads no facts showing that bank account or cell phone account information was taken in the Incident. Plaintiffs also allege a loss of privacy. But what they plead is that criminals took their information and threatened to publish it. They plead no fact showing that the threat was carried out. Plaintiffs' remaining theories are a risk of future harm, time spent monitoring accounts, anxiety, diminished value of personal information, and a lost benefit of the bargain. None establishes standing on these allegations. Plaintiffs also lack standing to seek injunctive or declaratory relief, because they plead no fact suggesting that a second incident is imminent.

Even if Plaintiffs had standing, each claim would fail under Michigan law. A negligence claim requires an actual, present injury, and Plaintiffs plead none that the Incident caused. Their negligence per se and delayed-notice theories do not change that. The implied contract claim fails because Plaintiffs gave nothing for the alleged promise of data security beyond what their employment already required, and because they plead no facts showing that Challenge agreed to such a contract. The unjust enrichment claim fails because Plaintiffs do not allege that Challenge unjustly kept any benefit they conferred.

## II. BACKGROUND

### A. The Incident and the Notice Letter

Challenge manufactures automotive parts. It has 12 plants in six states and more than 3,000 employees. (Consol. Class Action Compl. ("Compl.") ¶¶ 2, 26, ECF No. 11, PageID.117, 123.) Plaintiffs are Michigan citizens who allege that they are current or former Challenge employees and that they were required to give Challenge personal information. (Compl. ¶¶ 18–21, 133, 145, 169, 191, PageID.121-122, 158, 161, 167, 172.)

On May 8, 2026, Challenge discovered unauthorized activity in its computer environment. (Compl. Ex. 1, ECF No. 11-2, PageID.209.) It began investigating immediately and engaged independent cybersecurity experts. (*Id.*) The investigation determined that "certain files were acquired without authorization." (*Id.*) Challenge reviewed those files and, on or about May 21, 2026, learned that they contained personal information. (*Id.*) On or about June 1, 2026, Challenge began mailing written notice to the individuals whose information was in the files (the "notice letter"). (*Id.*; Compl. ¶¶ 7, 18–21, PageID.118, 121-122.)

Plaintiffs attach a copy of the notice letter and allege that it reflects the letters each of them received. (Compl. ¶ 4 n.4, PageID.118.) The letter told the recipient that "some of your personal information was contained within the affected data." (Ex. 1, PageID.209.) It identified one category of information: "The information may have included your Social Security number." (*Id.*) The letter does not mention bank account, payment card, telephone, or email information. (*Id.*) It reports that Challenge notified the Federal Bureau of Investigation and implemented measures to enhance its security. (*Id.*) And it offered each recipient 12 months of credit monitoring, dark web monitoring, a $1 million identity fraud loss reimbursement policy, and identity theft recovery services, all at no cost. (*Id.*)

Plaintiffs also allege that Challenge reported to the Texas Attorney General that "at least full names and Social Security numbers were involved." (Compl. ¶¶ 6, 39, PageID.118, 126.)

### B. Plaintiffs' Allegations

Plaintiffs allege that Challenge failed to use reasonable data security and that this failure allowed cybercriminals to take their personal information. (Compl. ¶¶ 1, 11, 35, 50, 53, 95, PageID.116-117, 119-120, 125, 130, 131, 142.) They allege that on or around May 17, 2026, a ransomware group called "Chaos" claimed on the dark web to have 270 gigabytes of Challenge data and threatened to publish it within 72 hours "if the company did not contact them." (*Id.* ¶ 40, PageID.126-127.) The Complaint reproduces the post. (*Id.*) It pleads no fact showing that Chaos carried out the threat. It alleges that "it should be assumed" that Plaintiffs' information "is now freely available to anyone with an internet connection." (*Id.* ¶ 46, PageID.129.) Plaintiffs allege that they "believe" their information was sold on the dark web because that "is the modus operandi of cybercriminals." (*Id.* ¶ 59, PageID.132-133.) They allege a "strong probability" that stolen information has "been placed, or will be placed," there. (*Id.* ¶ 126, PageID.156.) Thomsen alleges that her information "has been posted, or will soon be posted." (*Id.* ¶ 154, PageID.162-163.) And three Plaintiffs allege, "upon information and belief," that their information "has already been published on the dark web." (*Id.* ¶¶ 155, 178, 200, PageID.163, 169, 174.)

The Plaintiffs allege similar injuries. They allege an increased risk of fraud and identity theft, loss of privacy, time spent responding to the Incident, anxiety and emotional distress, diminished value of personal information, and loss of the benefit of a bargain. (Compl. ¶¶ 118, 138–143, 150–152, 159–163, 166–167, 174–175, 182–185, 188–189, 196–197, 204–207, 210–211, PageID.153-154, 159-162, 165-168, 170-173, 176-177.) Each also alleges that he or she will spend money on credit monitoring in the future. (*Id.* ¶¶ 142, 155, 178, 200, PageID.160, 163, 169, 174.) No Plaintiff identifies any amount that he or she has actually paid. Thomsen, Parry, and Dykman allege that they "lost time and money related to monitoring" their accounts, but none says what money was spent, when, or on what. (*Id.* ¶¶ 166, 188, 210, PageID.166-167, 171-172, 176-177.)

Oros alleges no misuse of her information. She alleges that she checks her bills and accounts two or three times a day and that she has experienced anxiety, sleep disruption, stress, and fear. (Compl. ¶¶ 138–139, PageID.159-160.)

Thomsen alleges that she spent an estimated 42 hours researching the Incident, monitoring her accounts, contacting her bank, replacing her bank cards, freezing her credit, and reviewing her credit reports. (Compl. ¶ 150, PageID.161-162.) She alleges that in or about July 2026, about $350 in purchases she did not make were charged to her bank account, and that she was charged a $15 overdraft fee on about two transactions. (*Id.* ¶ 158, PageID.164.) Her bank "eventually reversed the fraudulent transactions and the overdraft fees." (*Id.*) She closed the account, opened a new one, and waited seven to eight business days for a new card. (*Id.*) She alleges that she missed utility payments in the meantime. (*Id.*) Thomsen alleges that she gave Challenge her bank account and bank card information for direct deposit. (*Id.* ¶¶ 145, 158, PageID.161, 164.) She alleges "[u]pon information and belief" that Challenge had her "bank information" at the time of the Incident. (*Id.* ¶ 158, PageID.164-165.) She also alleges an increase in spam calls, texts, and emails. (*Id.* ¶ 157, PageID.163-164.)

Parry and Dykman are long-term partners who shared a Verizon cell phone account. (Compl. ¶ 203 n.64, PageID.175.) Dykman alleges that after the Incident the account "was hacked." (*Id.* ¶ 203, PageID.175.) Both allege that their phone numbers and SIM cards were cloned and that someone ran up roughly $24,000 in charges, including for iPhones and travel passes. (*Id.* ¶¶ 181, 203, PageID.170, 175-176.) Parry "did not have to pay the $24,000." (*Id.* ¶ 181, PageID.170.) Dykman "was ultimately not responsible for this amount." (*Id.* ¶ 203, PageID.175.) Neither alleges that Challenge ever had their Verizon account or SIM card information. Each alleges that Challenge had a phone number. (*Id.* ¶¶ 169, 180, 191, 202, PageID.167, 169-170, 172, 175.) Both also allege an increase in spam. (*Id.* ¶¶ 180, 202, PageID.169-170, 175.)

Plaintiffs assert claims for negligence, breach of implied contract, and unjust enrichment. (Compl. ¶¶ 230–309, PageID.185-202.) They seek compensatory, punitive, and nominal damages, restitution, and injunctive and declaratory relief. (*Id.* ¶ 17, PageID.121.) The prayer for relief asks

for "injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein." (*Id.* Prayer for Relief ¶ c, PageID.202.) The Complaint does not otherwise specify that relief. It alleges that Plaintiffs have "an interest in ensuring" that their information is "protected from further breaches through the implementation of industry standard security measures and safeguards" and is "removed from all Defendant's servers, systems, and files." (*Id.* ¶¶ 86–87, PageID.140-141.)

## III. ARGUMENT

### A. Plaintiffs Lack Article III Standing.

Challenge moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing. This is a facial challenge, so the Court takes the Complaint's factual allegations as true. *In re Manpower of Lansing, MI, Inc., Data Breach Litig.*, No. 1:25-cv-956, 2026 WL 1194822, at *1 (W.D. Mich. Mar. 19, 2026). The Court does not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (quotation omitted).

Plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Each must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). And because "standing is not dispensed in gross," Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* at 431.

#### 1. Plaintiffs Do Not Allege a Concrete Injury.

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs offer several theories of injury. Challenge addresses them in turn.

#### i. No Plaintiff Alleges an Unreimbursed Loss From the Fraudulent Charges.

A monetary loss is a concrete injury. *TransUnion*, 594 U.S. at 425. But no Plaintiff alleges that the fraudulent charges left him or her with a loss. Thomsen alleges that her bank eventually reversed the unauthorized transactions and the overdraft fees. (Compl. ¶ 158, PageID.164.) Parry alleges that she "did not have to pay" the Verizon charges. (*Id.* ¶ 181, PageID.170.) Dykman alleges that he "was ultimately not responsible" for them. (*Id.* ¶ 203, PageID.175.) A fraudulent charge that is reversed or never paid is not a monetary injury. *See Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 580 (E.D.N.Y. 2015) (no standing where plaintiff "has not alleged that she suffered any unreimbursed charges"), *aff'd*, 689 F. App'x 89 (2d Cir. 2017).

Thomsen also alleges that she closed her account, waited seven to eight business days for a new bank card, and missed utility payments in the meantime. (Compl. ¶ 158, PageID.164.) She does not allege a late fee or any other resulting cost. To the extent that disruption is an injury, it flows from the alleged fraud. And as shown in Part III.A.2, the alleged fraud is not fairly traceable to Challenge.

#### ii. The Alleged Risk of Future Harm Does Not Establish Standing in This Suit for Damages.

A threatened injury must be "certainly impending" to support standing, and "[a]llegations of possible future injury" do not suffice. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis and quotation omitted). In an unpublished 2016 decision, the Sixth Circuit applied *Clapper* to a theft of personal data. It held that "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage." *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016).

*Galaria* was decided five years before *TransUnion*. There, the Supreme Court found "persuasive" the argument that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion*, 594 U.S. at 436 (emphasis in original). A risk of

future harm may support a claim for injunctive relief if the risk is "sufficiently imminent and substantial." *Id.* at 435. It does not, "without more," support a claim for damages. *Id.* at 437.

The Sixth Circuit reads *TransUnion* the same way. Before *TransUnion*, it had found the concreteness requirement satisfied where a statutory violation created "a material risk of harm." *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021) (quotation omitted). In *Ward*, the court recognized that the Supreme Court "abrogated that holding." *Id.* Plaintiffs who seek damages must now show that "the risk of future harm materialized" or that they "were independently harmed by their exposure to the risk itself." *Id.* (quotation omitted). The court applied that rule again in *Hardrick*, a prisoner's suit for damages that arose in this District. It held that his risk of contracting COVID-19, "without more, is insufficient to confer standing for monetary relief." *Hardrick v. Huss*, 155 F.4th 518, 529 (6th Cir. 2025). *See also Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022) ("*TransUnion* held that merely being subjected to a risk of future harm cannot support a suit for damages.").

Challenge acknowledges that district courts in this Circuit, including in this District, have continued to apply *Galaria* after *TransUnion*. *See, e.g.*, *Manpower*, 2026 WL 1194822, at *2–3; *In re Arbor Assocs., Inc. Data Sec. Litig.*, No. 1:25-cv-775, 2026 WL 2593049, at *7–8 (W.D. Mich. July 8, 2026); *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-cv-12086, 2023 WL 4303577, at *4 (E.D. Mich. June 30, 2023). One court in this District has observed that *TransUnion* appears to limit *Galaria*'s substantial-risk standard, although it went on to treat *Galaria* as persuasive and to find standing. *Kingen v. Warner Norcross + Judd LLP*, No. 1:22-cv-01126, 2023 WL 11965363, at *2–3 (W.D. Mich. Oct. 5, 2023). Challenge respectfully submits that *TransUnion* and *Ward* control. Plaintiffs seek damages, and the risk that a criminal may misuse their information in the future is not itself a concrete harm.

Plaintiffs' allegations fall short even under *Galaria*, which found standing on allegations of a substantial risk and mitigation costs that were "reasonably incurred." 663 F. App'x at 388. Plaintiffs allege that Chaos threatened to publish Challenge data within 72 hours. (Compl. ¶ 40, PageID.126-127.) The Complaint was filed nearly five months later. It does not allege what

happened when the 72 hours ran, and it identifies no site where any Plaintiff's information has appeared. It alleges publication as an assumption, a belief, a probability, or a matter of information and belief. (*Id.* ¶¶ 46, 59, 126, 155, 178, 200, PageID.129, 132-133, 156, 163, 169, 174.) Thomsen alleges that her information "has been posted, or will soon be posted," and the reason she gives is "the modus operandi of cybercriminals." (*Id.* ¶ 154, PageID.162-163.) But "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014). And where the Complaint says that information "has been stolen and published on the dark web," or lists "publication" among the injuries Plaintiffs "have suffered or will suffer," it pleads no supporting fact. (Compl. ¶¶ 166, 188, 210, 265, 307, PageID.166-167, 171-172, 176-177, 192-193, 201.)

Plaintiffs also identify no cost they have paid to mitigate the risk. They allege that they will spend money on monitoring in the future. (Compl. ¶¶ 142, 155, 178, 200, PageID.160, 163, 169, 174.)

**iii. Plaintiffs Do Not Allege That Their Information Lost Value or That They Lost the Benefit of a Bargain.**

Plaintiffs allege that the Incident diminished the value of their personal information. (Compl. ¶¶ 140, 160, 183, 205, PageID.160, 165, 170-171, 176.) They plead no facts in support. They do not allege that they tried or intended to sell their information, or that anyone would now pay them less for it. Each alleges the opposite, that he or she guards the information and does not readily disclose it. (*Id.* ¶¶ 136, 153, 176, 198, PageID.159, 162, 168-169, 174.) Courts in this Circuit reject the diminished-value theory on allegations like these. *See Lochridge*, 2023 WL 4303577, at *4 n.2 (diminished value did not suffice "as an independent injury in fact sufficient to confer standing" where plaintiff did not allege an attempt to sell his information); *Rodriguez v. CRG Lynwood LLC*, No. 24-11576, 2025 WL 2700614, at *5 (E.D. Mich. Sept. 22, 2025) (plaintiff had "no intent in participating in an illegal market"); *Malone v. Edw. C. Levy Co.*, No. 25-cv-

11107, 2026 WL 2444315, at *7 (E.D. Mich. Aug. 20, 2026) (diminished-value theory was "too abstract to establish standing").

Plaintiffs also allege that they lost the benefit of a bargain "because Defendant did not adequately protect" their information. (Compl. ¶¶ 118, 166, 188, 210, PageID.153-154, 166-167, 171-172, 176-177.) The Complaint describes the bargain as one in which Plaintiffs provided their information and "paid money" to Challenge, a portion of which was to pay for data security. (*Id.* ¶ 277, PageID.195-196.) But each Plaintiff alleges that he or she was Challenge's employee. (*Id.* ¶¶ 133, 145, 169, 191, PageID.158, 161, 167, 172.) No Plaintiff identifies any payment he or she made to Challenge. What remains is the allegation that Plaintiffs gave Challenge their information as a condition of employment. In a case brought by an employee against his employer, a court in the Eastern District rejected the employee's benefit-of-the-bargain theory. It held that the "Plaintiff mischaracterizes the nature of his bargain with Defendant," because employees do not provide their personal information in exchange for employment. *Polkowski v. Jack Doheny Cos.*, No. 2:25-cv-10516, 2025 WL 3079358, at *4 (E.D. Mich. Nov. 4, 2025), *appeal dismissed*, No. 25-2075, 2026 WL 1459816 (6th Cir. Mar. 9, 2026).

**iv. Plaintiffs Cannot Establish Standing Through Time Spent Guarding Against a Speculative Risk.**

Plaintiffs allege that they spent time monitoring their accounts and credit reports. (Compl. ¶¶ 138, 150, 174, 196, PageID.159, 161-162, 168, 173.) Challenge recognizes that courts in this Circuit have treated time spent responding to a data theft as an injury where the underlying risk of harm is substantial. *See, e.g.*, *Bowen v. Paxton Media Grp., LLC*, No. 5:21-cv-00143-GNS, 2022 WL 4110319, at *5 (W.D. Ky. Sept. 8, 2022); *Manpower*, 2026 WL 1194822, at *3. But plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. "Because a plaintiff cannot manufacture standing by spending time or money to guard against a non-imminent harm, those mitigation efforts do not independently establish standing." *Malone*, 2026 WL 2444315, at *7. *See also Rodriguez*, 2025 WL 2700614, at *5 (time spent monitoring accounts

could not confer standing where it was "based on an insubstantial risk of harm"). The Fourth Circuit applied the same principle in a suit over stolen driver's license numbers. It saw "no reason to treat mitigation time differently than mitigation costs." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 434 (4th Cir. 2025), *cert. dismissed*, No. 25-1085 (U.S. May 21, 2026).

Time spent monitoring accounts therefore adds nothing unless the harm it guards against is imminent. Plaintiffs plead no facts showing that it is, for the reasons in Part III.A.1.b. And to the extent Thomsen, Parry, and Dykman spent time disputing the charges described above, that time flows from fraud that is not fairly traceable to Challenge.

**v. Allegations of Anxiety and Distress Do Not Establish Standing.**

Plaintiffs allege fear, anxiety, stress, and emotional distress. (Compl. ¶¶ 139, 141, 161–163, 184–185, 206–207, PageID.159-160, 165-166, 171, 176.) Fear of a future harm is not an injury in fact unless the harm is certainly impending. *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864–65 (6th Cir. 2020). Another court in this District applied *Buchholz* to hold that "boilerplate allegations" of anxiety after a data incident did not establish an injury in fact. *Muniz v. Bronson Health Care Grp., Inc.*, No. 1:25-cv-693, 2026 WL 1649197, at *5 (W.D. Mich. Jan. 20, 2026). Plaintiffs' allegations are of that kind. Three of the four allege in identical words that they suffer "great anxiety beyond mere worry." (Compl. ¶¶ 162, 184, 206, PageID.166, 171, 176.)

The court in *Arbor* treated emotional distress, together with a substantial risk of future harm and lost time, as sufficient at the pleading stage. 2026 WL 2593049, at *6. But the Fourth Circuit has held that time spent and emotional distress, even if they are concrete injuries, "may serve as the sole basis for standing to recover damages only when incurred in response to a separate imminent harm." *Holmes*, 156 F.4th at 435. Plaintiffs plead no facts showing an imminent harm, for the reasons in Part III.A.1.b.

**vi. The Alleged Loss of Privacy Is Not a Concrete Injury.**

Plaintiffs allege that the theft of their information caused a loss of privacy. (Compl. ¶¶ 118, 141, 159, 161, 182, 204, PageID.153-154, 160, 165-166, 170, 176.) An intangible harm can be concrete if it has "a close relationship to harms traditionally recognized as providing a basis for

lawsuits in American courts." *TransUnion*, 594 U.S. at 425. The comparison need not be "an exact duplicate." *Id.* at 424. But a plaintiff's allegations "cannot be missing an element 'essential to liability' under the comparator tort." *Merck v. Walmart, Inc.*, 114 F.4th 762, 783 (6th Cir. 2024) (quotation omitted).

Plaintiffs describe the theft as an "unauthorized disclosure" of their information. (Compl. ¶ 10, PageID.119.) The traditional harm that corresponds to that description is the "disclosure of private information." *TransUnion*, 594 U.S. at 425. At common law, a claim for publicity given to a person's private life has "a publication requirement." *Merck*, 114 F.4th at 784. The Fourth Circuit applied that requirement to a theft of personal data in *Holmes*. It explained that although "the information need not be broadcast to the whole world, it must be accessible to many." 156 F.4th at 425. Two plaintiffs alleged "that they found their driver's license numbers listed on the dark web," and the court held that they had alleged a concrete injury. *Id.* at 425–26. The other two did "not provide any reason to think that their driver's license numbers are now generally accessible." *Id.* at 425. Their information was "currently accessible to only a few," and they had "not alleged a concrete injury." *Id.* That was so even though the hackers had "already posted" the first two plaintiffs' information to the dark web. *Id.* at 430.

A court in the Northern District of Ohio reached the same result on allegations close to these. In *Marlin*, two employees of a manufacturer and one employee's spouse sued after a ransomware attack in which a cybercriminal accessed names, Social Security numbers, and other personal information. *Marlin v. Associated Materials, LLC*, No. 5:23-cv-01621, 2024 WL 2319115, at *1 (N.D. Ohio May 22, 2024). The court held that they lacked standing. *Id.* at *4. It explained that the plaintiffs alleged "access by a single, unauthorized third party, not widespread disclosure," and that the harm alleged was "potential future misuse of the kind dismissed in *TransUnion*, not publicity." *Id.* at *3.

Plaintiffs' allegations resemble those that failed in *Holmes* and *Marlin*. Plaintiffs allege that criminals took files containing their information. (Compl. ¶¶ 4, 53, PageID.117-118, 131.) They allege that Chaos threatened to publish Challenge data within 72 hours, and they reproduce

the post. (*Id.* ¶ 40, PageID.126-127.) The threat they describe was conditional, and they plead no fact showing what happened when the 72 hours ran. No Plaintiff alleges that he or she has found his or her information on the dark web. No Plaintiff alleges an alert that it appeared there, although Challenge offered each of them dark web monitoring at no cost. (Ex. 1, PageID.209.) As shown in Part III.A.1.b, the Complaint's statements that the information was published rest on assumption, belief, and probability, and none is supported by a pleaded fact. Until stolen information is published, the harm of the theft is the risk that the thief will misuse it. That is the risk that, under *TransUnion*, cannot support a claim for damages.

Challenge recognizes that a plaintiff need not plead "an element-by-element match to a historical tort." *Salazar v. Paramount Global*, 133 F.4th 642, 647 (6th Cir. 2025), *cert. granted*, 146 S. Ct. 1591 (2026). In *Salazar*, the Sixth Circuit found a concrete injury where the defendant "disclosed his private information to Facebook without his knowledge or consent." *Id.* It acknowledged that another circuit "has distinguished information disclosure to a single company from disclosure to the 'public.'" *Id.* at 648 n.6. It distinguished that decision as one that "dealt with disclosures to mail processors, rather than the world's largest social media conglomerate." *Id.* It added that, "[m]ore importantly," finding a common-law analogue "does not require an exact match for each element of the common-law tort." *Id.* But *Salazar* did not involve a theft, and it did not hold that a criminal's possession of stolen information is by itself a concrete injury. Other courts have held that it is. *See Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285–86 (2d Cir. 2023); *Munger v. Matco Tools Corp.*, No. 5:23-cv-00337, 2026 WL 1223399, at *6 (N.D. Ohio May 5, 2026) (disagreeing with *Marlin* and finding "no reason to require 'widespread disclosure' of stolen PII to establish a privacy injury"). Challenge respectfully submits that *Holmes* and *Marlin* apply *TransUnion* and *Merck* correctly.

Nor does the theft resemble an intrusion upon seclusion. The Fourth Circuit did not reach that question in *Holmes*, and it cautioned that each privacy tort "must be taken on its own terms." 156 F.4th at 427 n.16. Challenge recognizes that two courts in the Eastern District have drawn the comparison and found a concrete injury. *Malone*, 2026 WL 2444315, at *5–6; *Rodriguez*, 2025

WL 2700614, at *3–4. But neither court found that the elements of the tort were met. In *Rodriguez*, the court noted that the plaintiff's allegations "likely do not satisfy the intrusion-upon-seclusion elements." 2025 WL 2700614, at *4. In *Malone*, the court dismissed the plaintiff's intrusion claim on the merits. It held that "[t]he objectionable acquisition must be the defendant's intrusion, not merely a third party's intrusion that the defendant allegedly failed to prevent." 2026 WL 2444315, at *13.

Challenge respectfully submits that the missing element is decisive. The comparison cannot be missing an element that is "essential to liability." *Merck*, 114 F.4th at 783 (quotation omitted). The Sixth Circuit applied that rule to this tort in *Merck*, where it rejected an intrusion analogy because "[a]n essential element of intrusion upon seclusion" was absent. *Id.* at 784. The defendant's own intrusion is no less essential, as *Malone* recognized. A federal court in Kansas found no concrete injury on that ground in a former employee's suit over stolen personal information. It explained that the tort "traditionally permitted recovery only when the defendant intentionally had invaded the plaintiff's private affairs," and the plaintiff had not "alleged an intentional invasion by defendant." *Jenkins v. Associated Wholesale Grocers, Inc.*, No. 24-4039-DDC-GEB, 2025 WL 708574, at *13 (D. Kan. Mar. 5, 2025). The court dismissed his complaint for lack of standing. *Id.* at *15. The same is true here. The intruders Plaintiffs describe are the criminals, who "intentionally targeted and accessed" their information. (Compl. ¶¶ 162, 184, 206, PageID.166, 171, 176.) Plaintiffs do not allege that Challenge intruded on anything.

The harm also differs in kind. At its core, the intrusion tort is concerned with "the right to maintain a sense of solitude in one's life and private affairs." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 345 (6th Cir. 2023). Plaintiffs do not allege that the criminals entered their homes, devices, or accounts to obtain their information. They allege that the criminals copied files from Challenge's computer system. (Compl. ¶¶ 4, 53, PageID.117-118, 131.) Their grievance is that others now hold their information. The common law addresses the spread of private information through the disclosure tort, and that tort requires publicity.

Even under the decisions that treat a theft of information as a concrete injury, the injury is a narrow one. It supports a claim for damages only. *Malone*, 2026 WL 2444315, at *9. *See also Holmes*, 156 F.4th at 428 (plaintiffs whose information was listed on the dark web had standing "only for retrospective relief like damages"). And as explained in Part III.B.1.a, it is not a present injury under Michigan law.

**2. The Alleged Fraud and Spam Are Not Fairly Traceable to Challenge.**

An injury must also be fairly traceable to the defendant's conduct. *TransUnion*, 594 U.S. at 423. "[T]he existence of a data breach, standing alone, cannot confer traceability to a defendant." *In re Flagstar Dec. 2021 Data Sec. Incident Litig.*, No. 22-cv-11385, 2024 WL 5659583, at *7 (E.D. Mich. Sept. 30, 2024). "A plaintiff must also allege that their data was compromised in the breach." *Id.*

The Complaint's specific allegations about what was taken concern names and Social Security numbers. Plaintiffs allege that Challenge reported that "at least full names and Social Security numbers were involved." (Compl. ¶¶ 6, 39, PageID.118, 126.) Oros alleges that the information taken "comprised, at least, her name and Social Security number." (*Id.* ¶ 137, PageID.159.) She also alleges "uncertainty over what information was revealed." (*Id.* ¶ 139, PageID.159.) Thomsen, Parry, and Dykman allege that the notice letter informed them that their Social Security numbers were involved. (*Id.* ¶¶ 146, 170, 192, PageID.161, 167-168, 173.) The letter itself says that the information "may have included your Social Security number," and it identifies no other category of information. (Ex. 1, PageID.209.) To the extent Plaintiffs' description of the letter goes further than the letter does, the letter controls. *Cates*, 874 F.3d at 536.

The alleged spam is not traceable to the Incident. Thomsen, Parry, and Dykman allege an increase in spam since the Incident. (Compl. ¶¶ 157, 180, 202, PageID.163-164, 169-170, 175.) They allege that Challenge "had in its possession" their phone numbers. (*Id.*) They plead no fact showing that their phone numbers were in the files that were acquired. No Plaintiff alleges that he or she gave Challenge an email address. (*Id.* ¶¶ 145, 169, 191, PageID.161, 167, 172.) Plaintiffs attribute the spam to the Incident based on "temporal proximity," their careful handling of their

information, and the fact that such communications are atypical for them. (*Id.* ¶¶ 157, 180, 202, PageID.163-164, 169-170, 175.) That is not enough. *See Malone*, 2026 WL 2444315, at *8 (increased spam did not support standing because plaintiff "does not allege that his phone number and email address were compromised in the breach"). *See also Holmes*, 156 F.4th at 420 n.3 (increase in spam texts and calls was not traceable where plaintiffs did not allege that the compromised information included cell phone numbers).

The alleged fraud is not traceable to the Incident either. Thomsen alleges unauthorized purchases from her bank account. (Compl. ¶ 158, PageID.164-165.) Parry and Dykman allege that the phone numbers and SIM cards on their shared Verizon account were cloned. (*Id.* ¶¶ 181, 203 & n.64, PageID.170, 175-176.) The Complaint does not explain how a name and Social Security number would allow someone to make purchases from an existing bank account or to clone a SIM card. Plaintiffs' own description of what criminals do with a stolen Social Security number includes neither. (*Id.* ¶¶ 66, 76, PageID.134, 137.) Thomsen alleges, on information and belief, that Challenge had her bank information at the time of the Incident. (*Id.* ¶ 158, PageID.164-165.) She pleads no fact showing that it was in the files acquired. Parry and Dykman do not allege that Challenge ever had their Verizon account or SIM card information. (*Id.* ¶¶ 169, 191, PageID.167, 172.)

Courts require a plausible connection between the information taken and the fraud alleged. *See Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023) (affirming dismissal for lack of standing where, as the district court observed, the complaint did not show how a fraudulent brokerage account and a payment for credit monitoring "can be traced to the disclosure of drivers'-license numbers"); *Jenkins*, 2025 WL 708574, at *7 (treating unauthorized purchases as an injury in fact but holding that a former employee did not plead facts tracing how unauthorized actors "could use the disclosed PII (his name, Social Security number, and date of birth) to make unauthorized PayPal purchases"); *Marlin*, 2024 WL 2319115, at *2 (plaintiffs made "no attempt to tie the alleged credit card fraud" to an employer "who never possessed his credit card information"). Where the Fourth Circuit found fraud fairly traceable to a theft of data, the fraud

matched the data. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 616–17, 623 (4th Cir. 2018) (credit card accounts were opened in the plaintiffs' names, which "required the use of an applicant's correct social security number and date of birth," and the defendant was allegedly "the only common source that collected and continued to store social security numbers").

Thomsen and Parry tie the fraud to the Incident through timing and the absence of similar fraud before. (Compl. ¶¶ 158, 181, PageID.164-165, 170.) Dykman simply asserts the connection. (*Id.* ¶ 203, PageID.175.) These allegations ask the Court to assume that the unknown persons who made purchases in California and cloned SIM cards obtained what they needed from Challenge's files. Plaintiffs "cannot rely on speculation about 'the unfettered choices made by independent actors not before the courts.'" *Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan*, 504 U.S. at 562).

The court in *Manpower* found traceability satisfied by allegations that the defendant failed to secure the data that was stolen. 2026 WL 1194822, at *3. That reasoning does not reach injuries that depend on data the Complaint does not allege was taken. Because the alleged fraud and spam are not fairly traceable to Challenge, they do not support standing. Neither does the time Plaintiffs spent responding to them.

### 3. Plaintiffs Lack Standing to Seek Injunctive or Declaratory Relief.

Plaintiffs also seek injunctive and declaratory relief. (Compl. ¶ 17, PageID.121; *id.* Prayer for Relief ¶ c, PageID.202.) They must establish standing for that relief separately. *TransUnion*, 594 U.S. at 431. A person exposed to a risk of future harm may pursue "forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 435.

The Complaint pleads no such risk. Each Plaintiff alleges, "upon information and belief," that his or her information remains in Challenge's possession. (Compl. ¶¶ 144, 168, 190, 212, PageID.160, 167, 172, 177.) Three allege that without court intervention it will be "at-risk of future data breaches." (*Id.* ¶¶ 168, 190, 212, PageID.167, 172, 177.) The Complaint also asserts that the information is "subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect" it. (*Id.* ¶¶ 118, 265, 307, PageID.153-154, 192-193,

201.) And it alleges that Plaintiffs have "an interest in ensuring" that their information is "protected from further breaches" and "removed from all Defendant's servers, systems, and files." (*Id.* ¶¶ 86–87, PageID.140-141.) These are conclusions. The Complaint further alleges that the information "remains unencrypted and available for unauthorized third parties to access and abuse." (*Id.* ¶ 118, PageID.153-154.) But no Plaintiff pleads a fact suggesting that a second incident is imminent. Plaintiffs' own exhibit states that Challenge "implemented measures to enhance security and minimize the risk of a similar incident occurring in the future." (Ex. 1, PageID.209.) Nor would the relief Plaintiffs describe reach the copies of their information that they allege criminals already hold. It would guard only against a second incident.

Courts in this Circuit have rejected requests for prospective relief on allegations like these. In *Malone*, the plaintiff alleged a past ransomware attack and the defendant's continued possession of his information. 2026 WL 2444315, at *8. The court held that those allegations "do not plausibly show a real and immediate threat" of future misuse or another attack, and that the plaintiff "lacks standing to seek injunctive or declaratory relief." *Id.* at *8–9. *See also Lochridge*, 2023 WL 4303577, at *8 (plaintiff "has not alleged any facts tending to show that a second data breach is currently impending or there is a substantial risk that one will occur"); *In re A-Line Staffing Sols. Data Sec. Incident Litig.*, No. 24-cv-11917, 2026 WL 1480273, at *15 (E.D. Mich. May 27, 2026) (courts have dismissed claims for prospective relief "based on the future risk of a second data breach"), *appeal docketed*, No. 26-1522 (6th Cir. 2026). In *Holmes*, the Fourth Circuit held that no plaintiff could seek prospective relief, including the two whose driver's license numbers were listed on the dark web. 156 F.4th at 435. "All the plaintiffs can show is that they are on the same footing as anyone else whose information was compromised in a data breach in the past few years." *Id.* at 433.

The same is true here. Standing is jurisdictional, and Plaintiffs must establish it for each form of relief they seek. They lack standing to seek injunctive or declaratory relief, and the Court should dismiss their claims to that extent.

#### 4. At a Minimum, Oros Lacks Standing.

Each Plaintiff must establish standing for his or her own claim. "Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431. Oros does not. She alleges no fraudulent charge, no spam, and no expense that she has paid. (Compl. ¶¶ 133–144, PageID.158-160.) She alleges that she checks her accounts, that she experiences anxiety and sleep disruption, and that she fears "uncertainty over what information was revealed." (*Id.* ¶¶ 138–139, PageID.159-160.) Each of her theories of injury fails for the reasons in Part III.A.1. If the Court concludes that another Plaintiff has standing, it should still dismiss Oros's claims.

### B. The Complaint Fails to State a Claim.

If the Court reaches the merits, it should dismiss each claim under Federal Rule of Civil Procedure 12(b)(6), and it should do so with prejudice. "A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits, and is therefore done with prejudice." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (quotation omitted). *See also Arbor*, 2026 WL 2593049, at *12 (dismissing consolidated complaint with prejudice where plaintiffs declined an opportunity to amend and did not move to amend).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiffs are Michigan citizens who sue their Michigan-based employer, and their claims arise under Michigan common law. (Compl. ¶¶ 18–22, PageID.121-122.)

#### 1. The Negligence Claim Fails Under Michigan Law.

To state a negligence claim, a plaintiff must allege that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 660, 822 N.W.2d 190, 195 (2012) (quotation omitted).

#### i. Plaintiffs Do Not Allege an Actual, Present Injury Caused by the Incident.

Michigan requires a present injury. "It is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 73, 701 N.W.2d 684, 689 (2005) (emphasis in original). A plaintiff "must demonstrate a present physical injury to person or property." *Id.* at 75–76, 701 N.W.2d at 690–91. This Court has applied that rule to dismiss a negligence claim to the extent it rested on a heightened risk of future illness, which "is not a cognizable injury under Michigan law." *Zimmerman v. 3M Co.*, 542 F. Supp. 3d 673, 681–82 (W.D. Mich. 2021).

The Michigan Court of Appeals applied the same rule to a disclosure of personal information in *Doe v. Henry Ford Health System*. It explained that "the injury complained of in a negligence action must be an actual, present injury." *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 600–01, 865 N.W.2d 915, 921 (2014). And it held that the plaintiff's "identity-theft-protection services are not cognizable damages in the absence of a present injury." *Id.* at 600, 865 N.W.2d at 921.

Federal courts in Michigan have applied *Henry* and *Doe* to dismiss negligence claims like this one. In *Arbor*, the plaintiffs listed harms that included the threat of identity theft, diminished value of their information, loss of the benefit of the bargain, loss of privacy, mitigation expenses and time, and anxiety. 2026 WL 2593049, at *5. The court held that "[t]he future injuries that Plaintiffs delineated are not cognizable injuries that support their negligence claim under binding Michigan case law." *Id.* at *9. In *Malone*, the court dismissed a former employee's negligence claim because "no actual, present physical injury is alleged." 2026 WL 2444315, at *10. Other decisions are in accord. *See In re Grede Holdings LLC Data Breach Litig.*, No. 25-cv-10831, 2026 WL 396292, at *3 (E.D. Mich. Feb. 12, 2026); *Polkowski*, 2025 WL 3079358, at *9; *Rodriguez*, 2025 WL 2700614, at *8; *Flagstar*, 2024 WL 5659583, at *11.

Plaintiffs' allegations fail under these decisions. Oros alleges no misuse of her information. She alleges risk, monitoring time, anxiety, loss of privacy, and diminished value. (Compl. ¶¶ 138–143, PageID.159-160.) None is a present injury under Michigan law.

Thomsen, Parry, and Dykman allege fraudulent charges, but those allegations do not supply a present injury for two reasons. First, no Plaintiff alleges that the charges left him or her with a loss. They were reversed or never paid. (Compl. ¶¶ 158, 181, 203, PageID.164-165, 170, 175-176.) Second, Plaintiffs do not plausibly allege that the Incident caused them. In *Arbor*, a plaintiff alleged attempted fraudulent charges on his credit card after the incident. The court held that the plaintiffs had "not plausibly connected this attempted fraud to the type of compromised data at issue here." 2026 WL 2593049, at *9. In *Grede*, former employees of a Michigan component parts manufacturer alleged a fraudulent bank charge nearly a month after the incident and "a sharp uptick in suspicious spam calls and texts." 2026 WL 396292, at *1, *3. The court dismissed the negligence claim, holding that temporal proximity "is insufficient to plausibly establish a causal link." *Id.* at *3. *See also A-Line*, 2026 WL 1480273, at *12 (complaint "essentially relies on mere temporal proximity and correlation, which do not suffice"). The same is true here. Thomsen and Parry tie the fraud to the Incident through timing and the absence of similar fraud before. (Compl. ¶¶ 158, 181, PageID.164-165, 170.) And as explained in Part III.A.2, the Complaint pleads no facts showing that bank account or wireless account information was taken.

Nor does the alleged spam state a present injury caused by the Incident. In *Arbor*, the court held that an alleged increase in spam calls after the incident "supports nothing more than correlation, not causation." 2026 WL 2593049, at *10. *Grede* reached the same result. 2026 WL 396292, at *3. *Manpower* came out differently. There the court held that increased spam was a present injury and that the plaintiffs had adequately alleged causation. 2026 WL 1194822, at *5–6. The court in *Arbor* contrasted *Manpower*, where the plaintiffs alleged facts connecting the theft of personal information to increases in spam. 2026 WL 2593049, at *10. Plaintiffs here rely on timing, their careful handling of their information, and the fact that the spam is new to them. (Compl. ¶¶ 157, 180, 202, PageID.163-164, 169-170, 175.) They plead no fact showing that their

phone numbers were in the files acquired, and no Plaintiff alleges that Challenge had his or her email address. (*Id.* ¶¶ 145, 169, 191, PageID.161, 167, 172.)

Plaintiffs may rely on *Lochridge* and *Kingen*, where negligence claims survived. Neither helps them. In *Lochridge*, the court allowed the claim to proceed because the plaintiff alleged that "his information was already used to fraudulently open an account and apply for a loan." 2023 WL 4303577, at *6. That is the kind of fraud that Plaintiffs themselves say a stolen Social Security number makes possible. (Compl. ¶¶ 66, 76, PageID.134, 137.) The charges alleged here are of a different kind, and each was reversed or never paid.

In *Kingen*, decided in 2023, the court found it "difficult to surmise which alleged injuries have already happened and which injuries could happen." 2023 WL 11965363, at *5. It allowed the negligence claim to proceed because the plaintiffs alleged "injury beyond a mere risk of future injury," including actual identity theft, and because a third party had stolen their information. *Id.* at *4–5. In *Manpower*, the same judge treated one plaintiff's allegation of a fraudulent charge as suggesting "actual identity theft or fraud." 2026 WL 1194822, at *6. But the court held that allegations of impending injury and of expenses incurred to address the risk of identity theft "are not sufficient under the *Henry* rule." *Id.* at *4. The court also held that "merely having PII viewed by third parties is insufficient." *Id.* at *5. *Arbor* quoted *Polkowski*'s holding that "disclosure of stolen information alone is not a present injury if no actual identity theft resulted from the disclosure." 2026 WL 2593049, at *9 (quoting *Polkowski*, 2025 WL 3079358, at *8). As explained above, Plaintiffs do not plausibly allege that the Incident caused the fraud they describe.

Plaintiffs therefore do not allege an actual, present injury caused by the Incident. That alone requires dismissal of the negligence claim.

**ii. Plaintiffs' Negligence Per Se Theory Does Not Save the Claim.**

Plaintiffs also allege that Challenge's "violations of the FTC Act constitute negligence per se." (Compl. ¶ 251, PageID.189.) That theory does not save the claim. "Michigan does not subscribe to the doctrine of negligence per se." *Candelaria v. B.C. Gen. Contractors, Inc.*, 236 Mich. App. 67, 82, 600 N.W.2d 348, 356 (1999). Under Michigan law, a violation of a statute

creates "a rebuttable presumption of negligence." *Id.* at 82 n.5, 600 N.W.2d at 356 n.5. It does not create a separate claim, and courts have rejected negligence per se theories in cases like this one. *See A-Line*, 2026 WL 1480273, at *9; *Grede*, 2026 WL 396292, at *3–4; *Flagstar*, 2024 WL 5659583, at *10–11 & n.7.

Nor does the FTC Act itself give Plaintiffs a claim. A private party may not "invoke the jurisdiction of the federal courts to enforce the Federal Trade Commission Act." *FTC v. Owens-Corning Fiberglas Corp.*, 853 F.2d 458, 464 (6th Cir. 1988). "Congress has clearly limited the invocation of jurisdiction under the FTC Act to the Commission itself." *Id.* And a statutory violation would not excuse Plaintiffs from pleading an actual, present injury. *See Malone*, 2026 WL 2444315, at *10 (FTC Act allegations "do not supply cognizable damages").

#### iii. Plaintiffs Allege No Injury From the Timing of the Notice.

Plaintiffs allege that Challenge delayed in notifying them of the Incident. (Compl. ¶¶ 7, 250, 255, 261, PageID.118, 189-190, 191-192.) The Complaint and its exhibit show the timing. Challenge discovered the unauthorized activity on May 8, 2026, learned on or about May 21 that the affected files contained personal information, and began mailing notice on or about June 1. (Ex. 1, PageID.209; Compl. ¶ 7, PageID.118.) Plaintiffs allege that the delay "compounded" their anxiety and kept them from acting sooner. (Compl. ¶¶ 7, 163, 185, 207, 261–263, PageID.118, 166, 171, 176, 191-192.) They identify no fraud or loss that earlier notice would have prevented. The only misuse that the Complaint dates occurred in or about July 2026, after the notice letter. (*Id.* ¶ 158, PageID.164.) A delayed-notice theory fails where the plaintiff "has not alleged that the delay itself caused a present, compensable injury." *Polkowski*, 2025 WL 3079358, at *9. *See also Malone*, 2026 WL 2444315, at *10.

### 2. The Implied Contract Claim Fails Because Plaintiffs Do Not Allege Consideration or Mutual Assent.

A contract requires that "(1) parties are competent to contract; (2) a proper subject matter was contracted over; (3) legal consideration existed; (4) agreement was mutual; (5) and mutual obligations existed." *Kingen*, 2023 WL 11965363, at *5 (citing *Mallory v. City of Detroit*, 449

N.W.2d 115, 118 (Mich. Ct. App. 1989)). An implied contract must still "satisfy the elements of mutual assent and consideration." *Manpower*, 2026 WL 1194822, at *7 (quotation omitted).

Plaintiffs do not allege consideration for a contract to provide data security. They allege that they were "required to provide their Private Information" to Challenge "in order to receive ... employment." (Compl. ¶ 270, PageID.194.) That allegation describes a condition of their employment. It does not describe a separate exchange. Courts applying Michigan law have dismissed implied contract claims by employees on this ground. In *Polkowski*, the court held that "[a]ny purported implied contract would be duplicative of the parties' express employment relationship and unsupported by independent consideration." *Polkowski*, 2025 WL 3079358, at *10. In *Malone*, the court held that providing a name and Social Security number as a condition of employment shows "why Defendant had the information, not that Plaintiff gave something separate in exchange for data security services." 2026 WL 2444315, at *12. *See also Manpower*, 2026 WL 1194822, at *7 (exchange of personal information "was merely incidental to their employment" (quotation omitted)); *Grede*, 2026 WL 396292, at *4; *A-Line*, 2026 WL 1480273, at *13. Challenge recognizes that implied contract claims were allowed to proceed in *Rodriguez*, where the defendant did not challenge consideration, and in *Lochridge*. *Rodriguez*, 2025 WL 2700614, at *9–10; *Lochridge*, 2023 WL 4303577, at *7. The more recent decisions cited above, including *Manpower* in this District, dismissed such claims for lack of consideration.

The Complaint also recites that "Plaintiffs and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services," and that part of that money was meant to pay for data security. (Compl. ¶¶ 270, 277, PageID.194, 195-196.) No Plaintiff identifies any payment that he or she made to Challenge or that anyone made on his or her behalf. Each alleges that he or she worked for Challenge. (*Id.* ¶¶ 133, 145, 169, 191, PageID.158, 161, 167, 172.) The allegation is a "formulaic recitation" that does not state a claim. *Twombly,* 550 U.S. at 555.

Plaintiffs' own description of the contract confirms that it lacks consideration. They allege that Challenge "agreed to comply with its statutory and common law duties to safeguard and protect" their information, and that in exchange they provided the information their employment

required. (Compl. ¶¶ 270, 277, PageID.194, 195-196.) Neither is consideration. "Under the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise." *Yerkovich v. AAA*, 461 Mich. 732, 740–41, 610 N.W.2d 542, 546 (2000). In *Manpower*, the court held that both the provision of personal information and the defendant's promise to safeguard it were "subsumed in Michigan's preexisting duty rule." 2026 WL 1194822, at *7. Plaintiffs assert that the contract included "consideration beyond those pre-existing duties," in the form of implied promises to follow industry standards and FTC guidelines. (Compl. ¶¶ 278–279, PageID.196.) That is a label. Plaintiffs plead no fact showing that Challenge made such a promise to any of them.

Plaintiffs also plead no facts showing mutual assent. They allege a "mutual understanding, and meeting of the minds, that Defendant would implement and maintain adequate and reasonable data security practices and procedures." (Compl. ¶ 274, PageID.195.) That is a conclusion. Plaintiffs allege that Challenge "promised data security to its employees as part of their employment" and, "[u]pon information and belief," that it "made promises and representations to its employees and customers" about keeping information safe. (*Id.* ¶¶ 30, 32, PageID.124, 125.) They do not identify any statement, document, or policy in which Challenge made such a promise. Their theory is that Challenge agreed to the contract by "soliciting and accepting" their information. (*Id.* ¶¶ 148, 172, 194, PageID.161, 168, 173.) *Kingen* dismissed an implied contract claim because the plaintiffs did not "explain how Defendant assented." 2023 WL 11965363, at *6. Challenge acknowledges that the court in *Polkowski* found mutual assent adequately alleged where an employer required its employees to provide personal information. *Polkowski v. Jack Doheny Cos.*, No. 2:25-cv-10516, 2025 WL 3079358, at *10. It still dismissed the claim for lack of consideration. *Id.*

Finally, Plaintiffs' claimed losses that depend on a risk of future harm are not recoverable in contract. A party claiming breach of contract must prove "its damages with reasonable certainty." *Doe*, 308 Mich. App. at 601–02, 865 N.W.2d at 921–22 (quotation omitted). In *Doe*, the cost of credit monitoring was not recoverable because the plaintiff's damages "derive from a

possible future harm that might or might not occur, rather than directly from the breach of contract." *Id.* at 602, 865 N.W.2d at 922. Courts applying Michigan law have dismissed implied contract claims on this ground. *See Polkowski*, 2025 WL 3079358, at *8 ("negligence, breach of fiduciary duty, and breach of implied contract all require damages based on a present injury"); *Flagstar*, 2024 WL 5659583, at *13. Challenge recognizes that the court in *Kingen* rejected a lack-of-damages argument directed at an implied contract claim before it dismissed the claim for lack of mutual assent. 2023 WL 11965363, at *5 n.2, *6. Challenge also recognizes that a plaintiff who proves a breach of contract is "entitled to nominal damages." *Kolton v. Nassar*, 358 Mich. 154, 158, 99 N.W.2d 362, 364 (1959). Plaintiffs ask for nominal damages. (Compl. ¶¶ 17, 118, PageID.121, 153-154.) But nominal damages presuppose a breach, and Plaintiffs plead no contract that Challenge could have breached.

### 3. The Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege That Challenge Unjustly Retained a Benefit From Them.

To state a claim for unjust enrichment, a plaintiff must allege "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003). Plaintiffs identify three supposed benefits: their personal information, their labor, and money that Challenge allegedly saved by not spending more on data security. (Compl. ¶¶ 296–298, 301–302, PageID.199, 200.) None supports the claim.

Plaintiffs' personal information is not a benefit that Challenge unjustly retained. Plaintiffs allege that they provided it in order to be employed. (Compl. ¶¶ 133, 289, PageID.158, 198.) As the court put it in *Malone*, the plaintiff "gave his PII so Defendant could employ and pay him, not so Defendant could sell, monetize, or keep a separate benefit for itself." 2026 WL 2444315, at *12. Any benefit an employer receives from holding employee information is "merely incidental to the parties' employment relationship." *Grede*, 2026 WL 396292, at *5 (quotation omitted). *See also A-Line*, 2026 WL 1480273, at *14; *Kingen*, 2023 WL 11965363, at *5 (dismissing where plaintiffs pleaded no facts showing how defendant benefited from possessing their information). Plaintiffs

also allege that Challenge "did not fully compensate" them "for the value that their Private Information provided." (Compl. ¶ 293, PageID.198.) They plead no fact showing what that value was or how Challenge profited from holding their information.

Plaintiffs' labor is not a benefit unjustly retained. Plaintiffs do not allege that Challenge failed to pay them for their work. They allege instead that part of the revenue their labor generated should have gone to data security. (Compl. ¶¶ 291–292, PageID.198.) That is the savings theory in another form.

And money that Challenge allegedly did not spend on data security is not a benefit that Plaintiffs conferred. Such alleged savings "describe money Defendant allegedly failed to spend on its own systems, not a benefit Plaintiff transferred to Defendant." *Malone*, 2026 WL 2444315, at *12. *See also Polkowski*, 2025 WL 3079358, at *11 (alleged savings were "derivative of Defendant's internal business decisions, not a transfer of value from Plaintiff himself"); *Manpower*, 2026 WL 1194822, at *7 (plaintiffs did not show that defendant received a benefit from them).

## IV. CONCLUSION

Challenge respectfully requests that the Court dismiss the Consolidated Class Action Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In the alternative, Challenge requests that the Court dismiss the Complaint with prejudice for failure to state a claim under Rule 12(b)(6). At a minimum, the Court should dismiss Oros's claims and Plaintiffs' requests for injunctive and declaratory relief for lack of standing.

Dated: November 13, 2026

Respectfully submitted,

By: */s/ Ashley Orler*
Ashley Orler (P80856)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
20 N. Wacker Drive, Suite 4120
Chicago, IL 60606
Tel: (773) 661-4710
aorler@constangy.com

Andrew Chase (*Pro Hac Vice* Forthcoming)
Chasity Henry (*Pro Hac Vice* Forthcoming)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
45 Main Street, Suite 206
Brooklyn, NY 11201
Tel.: (646) 341-6549
achase@constangy.com
chenry@constangy.com

*Attorneys for Defendant Challenge Mfg. Company, LLC*

**CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT**

In compliance with LCivR 7.2(b)(ii), the undersigned counsel of record for Defendant Challenge Mfg. Company, LLC certifies that this brief contains 9,652 words, as defined by LCivR 7.2(b)(i) and as determined by Microsoft Word for Microsoft 365.

Dated: November 13, 2026

Respectfully submitted,

By: *[/s/ Ashley Orler]*
Ashley Orler (P80856)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
20 N. Wacker Drive, Suite 4120
Chicago, IL 60606
Tel: (773) 661-4710
aorler@constangy.com

Andrew Chase (*Pro Hac Vice* Forthcoming)
Chasity Henry (*Pro Hac Vice* Forthcoming)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
45 Main Street, Suite 206
Brooklyn, NY 11201
Tel.: (646) 341-6549
achase@constangy.com
chenry@constangy.com

*Attorneys for Defendant*
*Challenge Mfg. Company, LLC*

## DECLARATION OF SERVICE

I, Tamara May, a non-attorney, declare that on November 13, 2026, I caused the ***Brief in Support of Defendant Challenge Mfg. Company, LLC's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint*** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ Tamara May*______________________
Tamara May